Filed 5/28/26  In re J.L. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| In re J.L. et al., Persons Coming Under the Juvenile Court Law. | B350102 <br><br> (Los Angeles County Super. Ct. No. 21CCJP04668A–B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> N.T., <br><br> Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Terry T. Truong, Judge.  Affirmed.

Jacob I. Olson, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Jacklyn K. Louie, Assistant County Counsel, Bryan Mercke, Deputy County Counsel, for Plaintiff and Respondent.

———————————————

Appellant N.T. (mother) appeals from juvenile court orders terminating her parental rights over her two minor children, J.L. and A.L.  Mother specifically argues that the Department of Children and Family Services (DCFS) failed to adequately inquire into the children's Indian heritage on mother's side, as required by the federal Indian Child Welfare Act (ICWA; 25 U.S.C. § 1901 et seq.) and related California law (Welf. & Inst. Code, § 224 et seq.).[1]  Father is not a party to this appeal, and mother does not argue that the ICWA inquiry on father's side was inadequate.  Accordingly, our analysis focuses on the ICWA inquiry on mother's side.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The juvenile court exercised jurisdiction over J.L. in December 2021, and over A.L. in August 2022.  The court sustained petitions under section 300 alleging that both children were at risk of harm based on exposure to the parents' domestic violence and father's history of substance abuse, and declared the children dependents of the court.

### ICWA investigation in prior proceedings

In early 2020, during a prior dependency proceeding involving mother, maternal grandmother and maternal

---

[1]     All further undesignated statutory references are to the Welfare and Institutions Code.

grandfather each filed a Parental Notification of Indian Status (ICWA-020) form stating, "I have no Indian ancestry as far as I know."[2]  During a February 2020 pre-adjudication progress hearing, the juvenile court found no reason to know that mother was an Indian child.[3]  And in January 2022, maternal grandmother denied having any Indian ancestry.

### ICWA investigation in this proceeding

In July and August 2021, mother denied that she or J.L. had any Indian heritage.  Mother submitted an ICWA-020 form in October 2021 indicating that J.L., mother, and maternal grandparents were not eligible for membership in any federally recognized tribe.

In February 2022, the court found that there was no reason to know J.L. was an Indian child, and in May 2022 it found that ICWA was not applicable to A.L.

At the start of the underlying proceedings, mother and J.L. were living in a DCFS foster care placement with foster mother Theresa A.[4]  Mother began living with Theresa A. in 2019.  DCFS

---

[2]     Through the ICWA-020 form, a parent in a dependency proceeding must provide information about the child's Indian status.  The form "is not intended to constitute a complete inquiry," and it advises that a parent must disclose any subsequently discovered information relevant to the child's Indian heritage.

[3]     We previously granted respondent's unopposed request for judicial notice of maternal grandparents' ICWA-020 forms and the February 2020 minute order from the prior proceedings (case No. 19CCJP01860G).

[4]     The record also refers to Theresa A. as Teresa E.

social workers interviewed Theresa A. about mother's case in August 2021, November 2021, and June 2022, but did not ever ask about mother's heritage.

In May, June, and November 2022, mother again denied having any Indian ancestry.

In November 2022, maternal great aunt informed DCFS that she believed that maternal great-great aunt had Indian heritage. Maternal great aunt did not know anything further, and she declined to provide maternal great-great aunt's name or date of birth. She said that no other family members would have any further information. Mother denied knowing maternal great-great aunt's name, and also reported that she was unaware of any other family members who might have further information.

As part of the ICWA inquiry, a DCFS social worker left voicemails for maternal grandmother in November 2022 and January 2023. DCFS did not receive a response as of February 2023. In February 2023, DCFS informed the court that maternal grandmother had denied having any Indian ancestry in January 2022 during mother's prior dependency matter.

In March 2023, the court again found that ICWA did not apply to this case.

In November 2023, the juvenile court ordered DCFS to continue to attempt to interview all known extended family members regarding potential Indian heritage.

In January 2024, mother again denied having any Indian ancestry. She also refused to provide a DCFS social worker with contact information for relatives that might have additional knowledge, stating: " 'I don't want to give any of my relatives['] phone numbers, I don't conversate with them like that.' "

At a February 2024 hearing, mother's counsel informed the court that mother had not provided any new information about her Indian ancestry. The court again found that ICWA did not apply to the case.

Mother denied having any Indian heritage again in April 2024.

In August and December 2024, the juvenile court directed DCFS to continue to investigate mother's Indian ancestry.

In March 2025, mother told a DCFS social worker: " 'We have Indian in us just don't know what tribe.' " Mother said that she had no additional details, and denied knowledge of other family members who might have further information.

In April 2025, the juvenile court directed DCFS to notify the Bureau of Indian Affairs that the children might be eligible for membership in an Indian tribe based on mother's ancestry. DCFS sent the notices in May 2025.

*Resolution*

On August 27, 2025, the court again found that ICWA did not apply to this case. It terminated mother's parental rights over both children. Mother timely appealed.

## DISCUSSION

On appeal, mother argues that the orders terminating her parental rights must be reversed because DCFS conducted an insufficient ICWA inquiry regarding the children's potential Indian ancestry on mother's side. We disagree and affirm.

## I. Applicable law and standard of review

" 'Indian child' means any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b)

5

is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); § 224.1, subd. (b).)

The juvenile court and county child welfare departments such as DCFS "have an affirmative and continuing duty to inquire whether a child for whom a petition under Section 300 . . . has been filed, is or may be an Indian child." (§ 224.2, subd. (a).) "Child welfare agencies discharge this state law duty by 'asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled.' (Welf. & Inst. Code, § 224.2 subd. (b).)" (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1125, fn. omitted (*Dezi C.*).) The agency is not obligated to " ' "find" unknown relatives and others who have an interest in the child, merely to make reasonable inquiries. The operative concept is those people who are reasonably available to help the agency with its investigation into whether the child has any potential Indian ancestry should be asked.' " (*Id.* at p. 1140.)

" 'Where, as here, the juvenile court finds ICWA does not apply to a child, "[t]he finding implies that . . . social workers and the court did not know or have a reason to know the children were Indian children and that social workers had fulfilled their duty of inquiry." [Citations.]' [Citation.]" (*In re Josiah T.* (2021) 71 Cal.App.5th 388, 401.) "We generally review the juvenile court's factual finding that ICWA does not apply for substantial evidence." (*In re C.R.* (2025) 112 Cal.App.5th 793, 800 (*C.R.*).)

"[T]he juvenile court's fact-specific determination that an inquiry is adequate, proper, and duly diligent is 'a

quintessentially discretionary function' [citation] subject to a deferential standard of review." (*Dezi C., supra,* 16 Cal.5th at p. 1141, quoting (*In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 1005 (*Ezequiel G.*).) " 'On a well-developed record, the court has relatively broad discretion to determine whether the agency's inquiry was proper, adequate, and duly diligent on the specific facts of the case. However, the less developed the record, the more limited that discretion necessarily becomes.' " (*In re Kenneth D.* (2024) 16 Cal.5th 1087, 1101–1102.) Accordingly, "[i]f, upon review, a juvenile court's findings that an inquiry was adequate and proper and ICWA does not apply are found to be supported by sufficient evidence and record documentation as required by California law [citation], there is no error . . . ." (*Dezi C.,* at p. 1141.)

## II. Substantial evidence supports the juvenile court's ICWA finding

We turn now to the facts relevant to mother's arguments on appeal, which challenge only the adequacy of the ICWA inquiry on mother's side. Mother signed an ICWA-020 form denying knowledge of any Indian ancestry. She also denied having any Indian heritage at least six times throughout the underlying proceedings. In 2020, during a previous dependency matter, maternal grandparents both filed ICWA-020 forms denying knowledge of any Indian heritage.[5] And in 2022, in the prior matter, maternal grandmother denied having any Indian ancestry, and DCFS informed the juvenile court in this matter of

---

[5]     Mother concedes that these materials from the prior proceeding are relevant and that they establish that maternal grandparents denied Indian ancestry.

maternal grandmother's denial. These denials constitute substantial evidence in support of the juvenile court's finding that ICWA did not apply and its implied finding that DCFS's inquiry was sufficient. (*C.R.*, *supra*, 112 Cal.App.5th at p. 801 [substantial evidence supported finding that ICWA did not apply, based in part on maternal grandmother's ICWA-020 form from prior proceeding].)

We acknowledge that mother asserted that she had Indian heritage several years into these proceedings, despite repeatedly denying such heritage earlier in the case. And maternal great aunt also disclosed that she believed her mother had Indian ancestry. But mother and maternal great aunt both denied having any additional knowledge, and they also declined to identify any relatives who might know more. Because mother and maternal great aunt failed to provide DCFS with the identity of and contact information for any extended family members, further inquiry was not possible or required. (*In re Q.M.* (2022) 79 Cal.App.5th 1068, 1081; see *Dezi C.*, *supra*, 16 Cal.5th at p. 1143 [duty of inquiry is " 'slight and swift' "].)

Mother nonetheless argues that the juvenile court's ICWA finding is unsupported by substantial evidence because the record does not reflect whether DCFS asked mother's most recent foster parent, Theresa A., about mother's potential Indian heritage. We do not agree. Theresa A. became mother's foster parent when mother was 16 or 17 years old. Nothing in the record suggests or establishes that Theresa A. had information about mother's ancestry that was any more accurate than mother's own parents, who both denied having any Indian heritage. The court could have reasonably concluded that asking Theresa A. about mother's heritage was unnecessary, because she

8

was unlikely to yield "reliable information about a child's possible tribal affiliation." (*Ezequiel G.*, *supra*, 81 Cal.App.5th at p. 1009; *C.R.*, *supra*, 112 Cal.App.5th at p. 802 [asking maternal cousin about Indian ancestry "unnecessary" where maternal grandmother denied such ancestry in previous dependency proceeding].)

Mother also asserts that the ICWA inquiry was inadequate because DCFS failed to interview "prior foster parents, and other reasonably available extended family members." But DCFS "is not required to 'cast about' for information or pursue unproductive investigative leads." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1053.) Mother has not identified any specific individual with relevant knowledge who was available to be interviewed but was not contacted by DCFS. And even assuming that any such individual was available, as we have discussed, maternal grandparents both denied having any Indian heritage. We therefore conclude that the court's finding that there was no reason to know that the children were Indian children is supported by substantial evidence.

## DISPOSITION

We affirm the juvenile court's August 27, 2025 orders.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

HANASONO, J.

We concur:

EGERTON, Acting P. J.

ADAMS, J.

10